UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

JULIAN WADE,

Defendant.

**DECISION AND ORDER**
09-CR-260S

## I. INTRODUCTION

On December 21, 2010, after a six-day trial, the jury returned a guilty verdict against Defendant Julian Wade on Counts 1, 2, 3, and 4 of a six-count Indictment, which charged him with violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (unlawful possession with intent to distribute a controlled substance), 21 U.S.C. § 844(a) (unlawful possession of a controlled substance), 18 U.S.C. § 924(c)(1) (unlawful possession of a firearm in furtherance of a drug trafficking crime), and 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (felon in possession of a firearm), respectively.[1]

Defendant's now moves this Court to grant a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or alternatively, a new trial pursuant to Rule 33. Defendant also moves to submit additional evidence in support of post-trial motions. The Government opposes these motions. For the reasons discussed below, Defendant's

[1]The fifth count of the Indictment charged Defendant with violating 18 U.S.C. §§ 922(g)(1) and 924 (a)(2) (felon in possession of ammunition). This Court granted Defendant's motion for judgment of acquittal on Count V at the conclusion of the Defendant's proof in this case. The sixth count of the Indictment charged Defendant with violating 18 U.S.C. §§ 924(d) and 3665 and 28 U.S.C. § 2461(c) (forfeiture allegations) and was not submitted to the jury.

motions for a judgment of acquittal and a new trial are denied.

## II. BACKGROUND[2]

Defendant was serving a term of Supervised Release pursuant to a sentence for felony conviction, when the probation officer supervising Defendant discovered that he was staying at an unreported residence and using unreported vehicles, in violation of the conditions of his Supervised Release. After further investigation and surveillance of Defendant, on May 11, 2009, probation officers detained Defendant after they observed him exiting the unreported residence, which was occupied by his then-girlfriend, Charmaine Taliaferro, and her children. During a search of the residence, authorities discovered a quantity of cocaine base and a semiautomatic pistol between the mattress and box spring of Taliaferro's bed, where Defendant occasionally slept. A digital scale and items and documents belonging to Defendant were also found.

On December 13, 2010 a jury trial commenced before this Court on a five count indictment. Count 1 charged Defendant with violating 21 U.S.C. § 841(a)(1) and (b)(1)(B). Count 2 charged a violation of 21 U.S.C. § 844(a). Count 3 charged Defendant with a § of 18 U.S.C. § 924(c)(1). Count 4 charged a violation of 18 U.S.C. section 922(g)(1) with regard to a firearm and ammunition with which the weapon was loaded. Count 5 charged a violation of 18 U.S.C. § 922(g)(1) and 924(a)92) concerning ammunition. Following the close of Defendant's proof, this Court granted Defendant's Rule 29(a) motion to dismiss Count 5. The remaining counts were submitted to the jury, which returned a verdict of guilty on December 21, 2010.

Defendant filed a Rule 29 motion for a judgment of acquittal or new trial on January

[2]As counsel did in their motion papers, this Court assumes familiarity with the pretrial proceedings and trial evidence.

11, 2011. On March 18, 2011, Defendant filed a motion to submit additional evidence to augment its post-trial motions. Without deciding on that motion, this Court adjourned sentencing. Defendant then filed his Rule 33 Motion for New Trial on April 7, 2011.

Although this Court reserved judgment on Defendant's underlying request to submit additional evidence, it issued an order for production of certain laboratory protocols in furtherance of Defendant's motions. Subsequently, on August, 15, 2011 Defendant filed a supplemental motion for new trial, to which Defendant attached the additional evidence he sought admitted.

Presently before this Court are Defendant Julian Wade's Rule 29(c) Motion for Judgment of Acquittal (Docket No. 109), Rule 33 Motion for New Trial (Docket No. 122), Motion to Submit Additional Evidence in Support of His Post-Trial Motions (Docket No. 118), and Supplemental Motion for New Trial (Docket No. 136).[3] For the reasons to follow, Defendant's motions for a judgment of acquittal and new trial will be denied.

## III. DISCUSSION

### A. Defendant's Request to Submit Additional Evidence

At the outset this Court addresses Defendant's request to submit additional evidence in support of his post-trial motions. Defendant's motion was made in response to the Government's alleged failure to fully disclose the nature of its DNA expert's testimony pursuant to Federal Rule of Criminal Procedure Rule 16. (Docket No. 118, ¶ 6.) This Court reserved judgment, but granted Defendant's request for an order directing disclosure of certain laboratory protocols. (Docket No. 135.) Defendant having made a Rule 33 motion on the basis of newly discovered evidence, this Court grants Defendant's

[3]The Government has submitted opposing memoranda on each of Defendant's motions. (Docket Nos. 112, 120, 124.)

request to submit additional evidence in order to fully consider the Defendant's motions. However, for the reasons discussed below, this Court finds that the expert affidavit submitted by Defendant does not constitute newly discovered evidence and will not support the Defendant's motions under Rule 29 or Rule 33.

**B. Rule 29**

Rule 29 provides, in pertinent part, that upon the defendant's motion, a court must "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." The focus of a Rule 29 motion therefore falls on the sufficiency of the evidence presented in the government's case-in-chief. See United States v. Saneaux, No. 03 CR 781, 2005 WL 2875324, at *2 (S.D.N.Y. Nov. 1, 2005).

A defendant challenging the sufficiency of the evidence bears a heavy burden. See United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000); United States v. Walker, 142 F.3d 103, 112 (2d Cir.1998). A district court may enter a judgment of acquittal on the grounds of insufficient evidence only if "after viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in the government's favor, it concludes no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." United States v. Reyes, 302 F.3d 48, 52 (2d Cir. 2002); see also United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003); United States v. Skinner, No. 03-CR-11, 2005 WL 782811, at *1 (W.D.N.Y. Apr. 6, 2005). Stated another way, "the court may enter a judgment of acquittal only if the evidence that the defendant committed the crime is non-existent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999) (citation and quotation omitted).

When considering the trial evidence, "the court must be careful to avoid usurping the role of the jury." See Reyes, 302 F.3d at 52. The court is not permitted to "substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." Guadagna, 183 F.3d at 130 (internal quotations and citations omitted). The court must give "full play" to the jury's credibility determinations, weighing of the evidence, and drawing of justifiable inferences of fact. See United States v. Spadoni, No. 00-CR-217, 2005 WL 2275938, at *3 (D. Conn. Sept. 15, 2005) (citing Guadagna, 183 F.3d at 129).

To sustain its burden at trial on Count 1, unlawful possession with intent to distribute a controlled substance, the Government had to prove beyond a reasonable doubt that (1) Defendant possessed cocaine base, (2) Defendant knew he possessed a controlled substance, and (3) Defendant intended to distribute the cocaine base. For this count, the Government also had to prove that the quantity of cocaine base was five grams or more. To sustain its burden on Count 2, the lesser included offense of unlawful possession of a controlled substance, the Government had to prove beyond a reasonable doubt that (1) Defendant possessed cocaine base, and (2) Defendant knew that he possessed a controlled substance. For this count, the Government also had to prove that the quantity of cocaine base was in excess of five grams. To sustain its burden on Count 3, unlawful possession of a firearm in furtherance of a drug trafficking crime, the Government had to prove beyond a reasonable doubt that (1) Defendant knowingly and unlawfully possessed a firearm, (2) in furtherance of drug trafficking crimes. Finally, to sustain its burden on Count 4, felon in possession of a firearm and ammunition, the Government had to prove beyond a reasonable doubt that (1) Defendant had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, (2) knowingly possessed a

firearm and ammunition, and (3) the possession of the firearm and ammunition was in or affecting interstate commerce.

Defendant argues that there was insufficient evidence presented at trial to connect him to the cocaine base or the firearm. In support of this argument, Defendant states that his only connection to the cocaine base was that officers discovered it under a mattress where Defendant sometimes slept, in a residence to which other people also had access. He also relies on the fact that there was no DNA or fingerprint evidence recovered from the cocaine base. Similarly, Defendant argues that because there were no usable fingerprints recovered from the firearm, cartridges, or magazine, there was insufficient evidence presented at trial to link the firearm found under the mattress to him. Defendant points out that the Government's expert witness who testified regarding DNA evidence recovered from the firearm did not rule out the possibility that the presence of DNA evidence was due to secondary transfer as a result of Defendant sleeping on the mattress under which the firearm was located. Defendant also relies on the fact that the outside of the weapon was the only area tested for DNA, which would be the area of a firearm subject to secondary transfer DNA.

Here, the Court finds that the evidence presented at trial is not so lacking that a reasonable jury could not find guilt beyond a reasonable doubt. Having presided over this trial and having heard the Government's evidence, this Court is fully satisfied that the Government's proof was sufficient to support the jury's guilty verdict on each of the four counts. This conclusion is particularly inescapable when the evidence and all reasonable inferences are considered in the light most favorable to the Government, as is required under Rule 29. See Reyes, 302 F.3d at 52.

Although it is true that no fingerprint or DNA evidence was presented as evidence

that Defendant handled the cocaine base, the Government introduced sufficient evidence to conclude that the Defendant held dominion over the contraband and firearm. To establish the element of possession beyond a reasonable doubt for the charges of both possession with intent to distribute a controlled substance (Count 1) and simple possession of a controlled substance (Count 2), the Government was required to demonstrate that Defendant had actual possession of the cocaine base, or had "the power and intention to exercise dominion and control over" the cocaine base. United States v. Rodriguez, 392 F.3d 539, 548 (2d Cir. 2004) (citing United States v. Payton, 159 F.3d 49, 56 (2d Cir. 1998)). Accordingly, this Court instructed the jury with respect to the definition of possession, in relevant part, that:

> a person need not have actual physical custody of any object in order to be in legal possession of it. If an individual has the ability and intent to exercise substantial control over an object that he does not have in his physical custody, then he is in possession of that item.

See L. Sand, J. Siffert, W. Loughlin, S. Reiss, & N. Batterman, Modern Federal Jury Instructions – Criminal ¶ 56.01 (2010) (model instruction 56-4). The jury was given the example of "a person's possession of items he keeps in the safe deposit box of his bank" and instructed that "[a]lthough the person does not have physical custody of those items, he exercises substantial control over them and so has legal possession of them." Id.

Here, the Government presented evidence that the drugs and the firearm were found under a mattress on which Defendant had slept three to four nights per week for several months. While the Second Circuit has held that a defendant's "mere presence at the location of the contraband" is insufficient to support a finding of possession, United

States v. Rios, 856 F.2d 493, 496 (2d Cir. 1988) (per curiam), here the Government also introduced evidence that the drugs were found in close proximity under the mattress to the loaded firearm and Defendant's DNA represented the greatest contributor to the DNA mixture recovered from that weapon. Moreover, Taliaferro denied knowledge and possession of the cocaine base or the firearm in her residence. Although Defendant has submitted an expert's affidavit challenging the Government expert's trial opinions, the Court is mindful of that fact that it must make all reasonable inferences in favor of the prosecution. See Reyes, 302 F.3d at 52.

This is sufficient circumstantial evidence from which the jury could conclude that Defendant exercised dominion and control over the cocaine base in storing the drugs, along with his firearm, under the mattress on which he regularly slept, in order to protect the drugs from detection by the other occupants of the residence. See United States v. Glenn, 312 F.3d 58, 64 (2d Cir. 2002) ("the prosecution may prove its case entirely by circumstantial evidence so long as guilt is established beyond a reasonable doubt"); United States v. Sureff, 15 F.3d 225, 228 (2d Cir. 1994) (finding that conviction may be based on circumstantial evidence). The jury could directly infer Defendant's possession of the cocaine base from the evidence presented; no inferential leap of any significant distance was required. Cf. Glenn, 312 F.3d at 70 (noting that "as the inferential leap between the fact and the proposition to be derived grows, the probative value of the [circumstantial] evidence diminishes"). Similarly, the circumstantial evidence suffices for a jury to conclude that Defendant stored his firearm under the mattress on which he regularly slept in order to protect the cocaine base in the event that a drug deal went sour and a buyer demanded a return of his cash.

Accordingly, Defendant's motion for a judgment of acquittal on the basis of

insufficiency of the evidence is denied.

Defendant additionally argues a series of evidentiary and procedural grounds for granting his motion for judgment of acquittal. These include, that the Government ‘s expert testified beyond the scope of what Defendant was given notice of, that the Government unfairly prejudiced the Defendant with evidence of his prior conviction, and that this Court prevented Defendant from introducing evidence, after indicating that it would permit Defendant to pursue a defense theory on its basis. While the respective merit of these challenges may be resolved on appeal, this Court finds that they do not respond to the purpose of a Rule 29 motion. Cf United States v. Cosgrove, 637 F.3d 646, 657 (6th Cir. 2011) (separately addressing Rule 29 sufficiency of the evidence and evidentiary objections). Rule 29's purpose is to challenge the sufficiency of the evidence, not its admissibility. See Saneaux, 2005 WL 2875324, at *2. Consequently, Defendant’s motion for a judgment of acquittal is denied.

**C. Rule 33**

Rule 33 authorizes the court to “vacate any judgment and grant a new trial if the interest of justice so requires.” See also Eberhart v. United States, 546 U.S. 12, 126 S.Ct. 403, 163 L. Ed. 2d 14 (2005) (per curiam). While the standards governing Rule 29 and Rule 33 motions are similar, the Second Circuit has commented that “[g]enerally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority sparingly.” United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (citation and quotation omitted); see also United States v. Costello, 255 F.2d 876, 879 (2d Cir. 1958) (“It is well-settled that motions for new trials are not favored and should be granted only with great

caution.")

In determining whether a new trial is required, "[t]he district court must strike a balance between weighing the evidence and credibility of witnesses and not 'wholly usurping' the role of the jury." United States v. Schlesinger, Cr. No. 02-485, 2005 WL 2482528 (E.D.N.Y. Oct. 7, 2005) (quoting Ferguson, 246 F.3d at 133, 134, in turn citing, Autuori, 212 F.3d at 120). Generally, trial courts "must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses." United States v. LeRoy, 687 F.2d 610, 616 (2d Cir. 1982). It is only in exceptional circumstances that the court may invade the jury's function in this regard. See Ferguson, 246 F.3d at 133-134 (citing United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992)). Exceptional circumstances may be found, for example, where the trial testimony or evidence is "patently incredible or defies physical realities." Sanchez, 969 F.2d at 1413.

The Second Circuit has set forth the relevant considerations as follows:

> The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice. The trial court must be satisfied that competent, satisfactory and sufficient evidence in the record supports the jury verdict. The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation. There must be a real concern that an innocent person may have been convicted.

Id.

In the context of Rule 33(b)(1), relief is justified "if the defendant makes a showing that the evidence is in fact new, i.e., it could not have been discovered, exercising due diligence, before or during trial, and that the evidence is so material and non-cumulative that its admission would probably lead to an acquittal." United States v. Wolfson, Nos S1-00 Cr. 628, 02 Cr. 1588, 2008 WL 1969730, at *1 (S.D.N.Y. May 5, 2008) (quoting United

States v. Siddiqi, 959 F.2d 1167, 1173 (2d Cir. 1992) (internal quotations omitted). A grant of retrial on the basis of newly discovered evidence should only be made "*in the most extraordinary circumstances*." United States v. Spencer, 4 F.3d 115, 118 (2d Cir. 1993) (emphasis in original). Here, that high standard has not been met.

Defendant must show first, that the affidavit it submits is, in fact, new evidence. Second, Defendant must show that it could not, by due diligence, have discovered and presented this evidence before or during trial. Third, the evidence must be so material that it would likely result in an acquittal. In the present case, Defendant has submitted for the Court the affidavit of a DNA expert that calls into question the conclusions of the Government's trial expert. This new evidence challenges the statistical methodology of the Government's expert and disagrees with that expert's conclusions. Because, in this Court's view, this evidence does not meet the three requirements for granting a new trial under the newly discovered evidence provision, this Court will deny Defendant's Rule 33 motion.

First, the Court notes that Defendant had access to a DNA expert that it had identified as one of its potential witnesses and provided that expert's CV. (Docket No. 79.) In fact, the Government actually requested summaries of that expert's expected testimony. Additionally, it appears that Defendant was able to consult an individual regarding the DNA testimony during cross-examination. This puts to rest Defendant's claim that it could not have resorted to this expert's assistance in challenging the Government's expert. This Court can only conclude that, for whatever reason, the Defendant's first expert proved unsatisfactory, leading Defendant to seek the assistance of a second DNA expert. However, the standard for newly discovered evidence is not met where a Defendant

communicates with an expert witness and later finds another witness with a different opinion. See Luhrsen v. Vantage S.S. Corp, 514 F.2d 104, 106 (5th Cir. 1975).

Second, Defendant has not shown that this new evidence could not have been acquired through due diligence. Although Defendant claims to have been "sandbagged" by the Government expert's testimony, no request for additional time to confer with his DNA expert was made. Nor did Defendant appear unprepared during cross-examination of the Government's witness. Defendant successfully elicited that the Government expert could not testify that the Defendant had ever touched the gun, and showed that the expert's statistical methodology was based on a subjectively chosen numerical threshold that might differ from one laboratory to the next. (Trial Tr. vol. 3, Docket No. 121, 105, 177, Dec. 17, 2010.) Finally, Defendant chose not to call its DNA expert.

Defendant argues in favor of an exception to the due diligence requirement because the Government failed to disclose the full extent of its experts' testimony regarding DNA. Defendant points this Court to a "limited exception" to the usual due diligence requirement where a Government witness gave false testimony and the prosecutor was directly involved in the transaction about which the witness lied. A new trial is warranted on the basis of the prosecutor's knowing use of false testimony where "(1) there was false testimony, (2) the Government knew or should have known that the testimony was false, and (3) there was 'any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" United States v. Milikoswky, 896 F. Supp. 1285, 1296 (quoting United States v. Helmsley, 985 F.2d 1202, 1205-06 (2d Cir. 1993)). The court in Hemlsley also noted that a "contrary decision might be indicated in a case where the possible harm was less pronounced, particularly where promising opportunities to resolve the issue of prosecutorial misconduct at trial were clearly available." 985 F.2d 1202, 1206-07 (quoting United States

ex rel. Washington v. Vincent, 525 F.2d 262, 268 (2d Cir. 1975). As this Court has noted, Defendant had the opportunity to call its expert and declined to do so. In addition to Defendant's cross-examination, this testimony might well have undone whatever potential prejudice there was in the Government expert's testimony. Independent from this observation, Defendant also fails to establish the necessary factors to warrant a new trial.

Defendant argues for an exception from the due diligence requirement because the prosecutor elicited false testimony that it knew or should have known was false on direct and re-direct examination, and used it on closing argument. Specifically, Defendant alleges errors on, (1) the expert's testimony that he was unaware that a mixture of DNA profiles could come up with a statistical number in the quadrillions; (2) the description of a 1 in 56,000 statistic as excluding 99.9% of the population; (3) the assertion that the full profile of the Defendant's DNA indicated that the defendant handled the gun directly and for extended periods of time; and (4) that Taliaferro could be excluded from the DNA profiles present on the weapon.

However, none of these rise to the level of false testimony. Defendant, on cross-examination, challenged the expert on whether mixtures of DNA profiles ever come up with statistical numbers in the quadrillions. (Trial Tr. vol. 3, Docket No. 121, 114, Dec. 17, 2010.) The Government expert responded that "I am not aware of it ever happening. It may have, I'm not ever aware of it. It's never happened with my analysis." Id. at 115. Although Defendant challenges this as "an erroneous opinion" it is not false testimony and does not excuse Defendant's lack of due diligence.

The Government's expert also testified that 99.9% of the population would be excluded from the DNA material recovered, on the basis of a 1 in 56,400 match. Again, although Defendant describes this as "misleading, unethical, and inaccurate" there is

nothing facially inaccurate about it from a mathematical standpoint. Defendant's new submissions explain how numbers can be manipulated in the context of DNA evidence. (Docket No. 136, Ex. A, ¶ 7 ("[I[f the probability of a randomly chosen African American being included in a mixed sample is 0.01 this could also be stated a chance of 1 in 100 of being included or 1% of African Americans would be included as possible donors.")) However, this, in itself, does not make the Government's expert's testimony false.

Defendant challenges as false the expert's opinion that Defendant was the last person to handle the gun and handled it more than anyone else. The Government's expert when asked about his opinion to the extent of contact between Defendant and the weapon, responded "[b]ecause his alleles are found on the gun in a higher concentration, it probably means he handled the gun for an extended period of time and more recently." (Trial Tr. vol. 3, Docket No. 121, 100-101.) Although Defendant now submits an expert's opinion challenging that assertion, a mere disagreement does not reveal a falsehood. Defendant has not shown that the Government's expert did not hold that opinion, or that the prosecutor was aware that the Government's expert falsely held that opinion. Moreover, Defendant impeached this very point on cross-examination. This does not rise to the level of a falsehood sufficient to trigger Helmsley's due diligence exception.

Finally, Defendant argues that the Government expert testified falsely that Taliaferro could be excluded as a contributor of the mixed DNA sample recovered from the weapon. (Id. at 182.) On this point too, Defendant engaged in extensive cross-examination. The Defendant was able to demonstrate the presence of numerous similarities between the mixture and Ms. Taliaferro's DNA. Furthermore, the Defendant was able to elicit testimony from the Government expert that Ms. Taliaferro was excluded on the basis of a missing allele. Furthermore, the Government clarified this point on re-direct as based solely on the

fact that Taliaferro's DNA sequence did not match every point on the DNA sample found, unlike Defendant.

The Court cannot conclude that Defendant has demonstrated that the Government expert testified falsely or that the Government was aware of such falsity. Even if it were otherwise, this Court cannot find, in light of its earlier discussion in regards to Defendant's Rule 29 motion, that Defendant's second DNA expert would have likely led to an acquittal. This is especially the case given Defendant's extensive cross-examination of the Government's expert witness. Taken together with the previously discussed circumstantial evidence, the likely result would remain a guilty verdict.

Because this Court finds that Defendant had sufficient opportunity to introduce similar evidence at trial, and because Defendant has not identified new evidence, has not identified false testimony, and cannot show that introduction of the new evidence would likely have led to an acquittal, this Court will deny Defendant's Rule 33 Motion for New Trial.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion seeking a judgment of acquittal or a new trial, Defendant's motion for a new trial, and Defendant's supplemental motion for a new trial are denied.

## V. ORDER

IT HEREBY IS ORDERED, that Defendant's Request to Submit Additional Evidence in Support of Post-Trial Motions (Docket No. 118) is GRANTED.

FURTHER, that Defendant's Motion for Judgment of Acquittal or a New Trial (Docket No. 109) is DENIED.

FURTHER, that Defendant's Motion for a New Trial (Docket No. 122) is DENIED.

FURTHER, that Defendant's Supplemental Motion for a New Trial (Docket No. 136) is DENIED.

SO ORDERED.

Dated: August 26, 2011
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court