UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

JULIAN V. WADE,

                    Defendant.

---

**DECISION AND ORDER**

Case No. 1:09-cr-260-WMS-JJM

                    I had always believed that the court has the authority to detain an individual

charged with violating the conditions of supervised release, pending a violation hearing before a

District Judge. Until last week, no one had ever argued to me that the court lacks that authority.

Now, however, defendant Julian Wade has made that argument. Having considered the parties'

submissions [212, 213, 215][1] and heard oral argument, for the following reasons I reluctantly

agree with him.

## BACKGROUND

                    On December 21, 2010, Wade was convicted of various felony drug and firearms

offenses following a jury trial [101]. On March 13, 2012, District Judge William M. Skretny

sentenced him to a lengthy period of incarceration, followed by a period of supervised release

[160]. That sentence was amended on March 19, 2012 [163], and again on September 10, 2013

[186]. On July 26, 2019, he was released from incarceration to begin supervised release. Petition

[210] at 1.

---

[1]     Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF
pagination.

On March 4, 2025, the government sought revocation of Wade's supervised release, alleging that he had violated the conditions of that release by committing unlawful imprisonment, assault, harassment, and resisting arrest, in violation of the New York Penal Law. Id. At Wade's initial appearance before me on March 5, 2021 [211], I qualified him for appointment of counsel, appointed AFPD John J. Morrissey to represent him, and scheduled a violation hearing before Judge Skretny for March 19, 2025 at 10:00 a.m.

Fed. R. Crim. P. ("Rule") 32.1(a)(6) provides that on an initial appearance for violation of supervised release, "[t]he magistrate judge may release or detain the person under 18 U.S.C. §3143(a)(1) pending further proceedings. The burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person". In requesting Wade's release prior to the violation hearing, Morrissey argued that I lack the authority to detain Wade pending the hearing, citing United States v. Mercado, 2025 WL 297429 (D. Conn. 2025).[2] Mercado holds that notwithstanding Rule 32.1(a)(6)'s reference to 18 U.S.C. §3143(a)(1), that statute does not apply to proceedings for revocation of supervised release.

According to the government, Mercado "reflect[s] the first known instance where a court has held that it lacked statutory authority to detain a defendant who has been charged with violating a condition of supervised release". Government's Reply [213] at 2. Following oral argument on March 6, 2025 [214], I ordered Wade detained pending further consideration of the parties' positions.

I am thus far aware of only two decisions addressing Mercado: United States v. Phillips, 2025 WL 484706 (W.D. Wash. 2025) and United States v. Malta, 09-cr-6018 [43]

---

[2]    Morrissey argued in the alternative that Wade had shown by clear and convincing evidence that he would not pose a risk of flight or danger to the community if released. I rejected that argument.

(W.D.N.Y. 2025) (Vacca, J.), both of which disagree with <u>Mercado</u> and hold that the court has

the authority to detain an individual pending a hearing to determine whether supervised release

should be revoked. While I respect their persuasive value, "[a] decision of a federal district court

judge is not binding precedent in either a different judicial district, the same judicial district, or

even upon the same judge in a different case". <u>Camreta v. Greene</u>, 563 U.S. 692, 709, n.7 (2011).

   Therefore, "I am obliged to give the matter presented to me for decision my best

independent reading of applicable law, regardless of whether that reading accords with that of

my superior". <u>Buffalo State Alumni Association, Inc. v. Cincinnati Insurance Co.</u>, 251 F. Supp.

3d 566, 574 (W.D.N.Y. 2017).

## DISCUSSION

   Procedural rules "do not provide substantive rights". <u>New York News, Inc. v.</u>

<u>Kheel</u>, 972 F.2d 482, 486 (2d Cir. 1992); 28 U.S.C. §2072(b) ("[s]uch rules shall not abridge,

enlarge or modify any substantive right"). Therefore, Rule 32.1(a)(6) cannot by itself authorize

pre-hearing detention - instead, that authority must be found in the statute to which it refers,

namely 18 U.S.C. §3143(a)(1).

   However, §3143(a)(1) does not provide that authority. *See* <u>Mercado</u>, 2025 WL

297429, at *6 ("the drafters of the Federal Rules of Criminal Procedure likely intended or

assumed that persons charged with violating the conditions of their supervised release could be

detained pending a determination of their guilt. The problem is that Congress did not amend 18

U.S.C. §3143(a) to implement the drafters' intention or assumption"); <u>United States v. Mincey</u>,

482 F. Supp. 2d 161, 163 (D. Mass. 2007) ("[t]he clear intent of Rule 32.1(a)(6) is that the

question of release or detention of persons charged with violations of supervised release or

probation be governed by that statute. However, the statute does not, by it terms, apply to that group").[3]

Instead, supervised release is specifically addressed by 18 U.S.C. §3583, which authorizes the court to "include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment" (§3583(a)) and allows it to revoke that release if the court first "finds by a preponderance of the evidence that the defendant violated a condition of supervised release". §3583(e)(3). "It is a commonplace of statutory construction that the specific governs the general." RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 645 (2012). That "is particularly true where . . . Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." Id.

The "specific solution" provided by §3583(e)(3) for violation of supervised release conditions is revocation of that release - but only *after* the court finds that the conditions have been violated. *See* Malta, 09-cr-6018 [43] at 8 ("[t]he 'grace' of supervised release may be withdrawn in the discretion of the sentencing court *when the court is satisfied* that the recipient of its grace is unworthy of it") (emphasis added).

"It is a fundamental principle of statutory interpretation that absent provisions cannot be supplied by the courts . . . . To do so is not a construction of a statute, but, in effect, an enlargement of it by the court." Rotkiske v. Klemm, 589 U.S. 8, 14 (2019). "Atextual judicial

---

[3]    §3143(a)(1) provides that the court "shall order" that a person awaiting imposition or execution of sentence "be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released". The fact that no such finding by the court is required prior to the commencement of supervised release is a further indication that §3143(a)(1) does not apply to supervised release or its revocation.

supplementation is particularly inappropriate when . . . Congress has shown that it knows how to adopt the omitted language or provision." Id.

In 18 U.S.C. §3142(f) (dealing with pretrial detention hearings), Congress expressly provided for *pre-hearing* detention: "[t]he hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance . . . . During a continuance, such person shall be detained". I may not overlook the fact that it did *not* do so here. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion". Russello v. United States, 464 U.S. 16, 23 (1983).

"Supervised release . . . permits a defendant a kind of conditional liberty by allowing him to serve part of his sentence outside of prison." Mont v. United States, 587 U.S. 514, 523 (2019). The Fifth Amendment guarantees that liberty (conditional or otherwise) may not be deprived (temporarily or otherwise) without due process of law - namely, in accordance with the authority granted by Congress. Because §3583(e)(3) does not authorize the court to temporarily detain Wade pending his supervised release violation hearing, that authority cannot be implied, particularly since the Non-Detention Act (18 U.S.C. §4001(a)) clearly states that "[n]o citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress".

Phillips suggests that "the Judiciary Act of 1789, which established the lower federal courts, provides sufficient statutory authorization to satisfy any requirement of the Non-Detention Act. The power to confine to coerce compliance with court orders is such a fundamental and well-established incident of judicial power that, in creating the lower federal

courts, Congress implicitly vested them with that power". 2025 WL 484706, at *3, *quoting* Armstrong v. Guccione, 470 F.3d 89, 103 (2d Cir. 2006). Here, however, there has been no finding of Wade's noncompliance with his conditions of supervised release.

Alternatively, Phillips reasons that "[t]he Court's authority is further reinforced by 18 U.S.C. § 401, which provides [that] '[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command'." 2025 WL 484706, at *4. Again, however, there has been no finding that Wade has disobeyed or resisted the conditions of his release.

Finally, both Phillips and Malta suggest that "even absent the authority granted by §3143(a) and Rule 32.1(a), the Court has the inherent power to detain individuals to enforce orders". Phillips, 2025 WL 484706, at *3; Malta, 09-cr-6018 [43] at 8. I respectfully disagree. "The extent of [inherent] powers must be delimited with care, for there is a danger of overreaching when one branch of the Government, without benefit of cooperation or correction from the others, undertakes to define its own authority . . . . In many instances the inherent powers of the courts may be controlled or overridden by statute or rule." Degen v. United States, 517 U.S. 820, 823 (1996). Therefore, "a precisely drawn, detailed statute pre-empts more general remedies". EC Term of Years Trust v. United States, 550 U.S. 429, 433 (2007).

"[T]he fact that Congress might have acted with greater clarity or foresight does not give courts a *carte blanche* to redraft statutes in an effort to achieve that which Congress is perceived to have failed to do. There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted . . . . Nor is the Judiciary licensed to attempt to soften the clear import of Congress' chosen words whenever

a court believes those words lead to a harsh result." <u>United States v. Locke</u>, 471 U.S. 84, 95 (1985).[4]

        However, that does not leave the government without a remedy. If the alleged violation of supervised release conditions is sufficiently serious, then it can and should be charged as a crime, so that resort may be had to the procedures 18 U.S.C. §3142, including pre-hearing detention. If the alleged violation amounts to a state rather than federal crime, then its treatment relative to detention can be addressed by state authorities.

        Since the government has "filed a notice of appeal in <u>Mercado</u> and has requested that the Second Circuit expedite argument and decision" (government's Reply [213] at 11), it suggests that if I do not reject Wade's argument outright, then "given the substantial consequences of <u>Mercado</u>", I should "defer ruling on this issue until it is resolved by the Second Circuit in the near future". While I would prefer to do so if I could, there is no indication that the Second Circuit will decide this issue prior to Wade's scheduled violation hearing before Judge Skretny on March 19, 2025, at which time his entitlement to pre-hearing release will become moot. Therefore, I must decide the issue now.

## CONCLUSION

        For the reasons discussed, I now conclude that I lack the authority to detain Wade pending his revocation hearing. Accordingly, I deny the government's motion for pre-hearing

---

[4]    <i>See also</i> <u>Dodd v. United States</u>, 545 U.S. 353, 359 (2005) ("[a]lthough we recognize the potential for harsh results in some cases, we are not free to rewrite the statute that Congress has enacted"); <u>Helvering v. Ohio Leather Co.</u>, 317 U.S. 102, 110 (1942) ("arguments urging the broadening of a . . . statute beyond its plain meaning to avoid harsh results are more properly addressed to Congress than to the courts").

detention, and order Wade to be released, subject to his previously imposed conditions of supervised release.

I do not do so lightly, recognizing that <u>Mercado</u> "upends decades of settled practice and risks destabilizing the post-arrest supervision system that has been in effect for decades". Government's Reply [213] at 11. Therefore, in order to give the government an opportunity to seek further review, I will stay the effective date of this Decision and Order until Monday, March 17, 2025 at noon. Unless a further stay is obtained by that time, he shall be released from custody pending his appearance before Judge Skretny.

**SO ORDERED.**

Dated: March 12, 2025

/s/_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge